# CADWALADER

Cadwalader, Wickersham & Taft LLP
200 Liberty Street, New York, NY 10281
Tel +1 212 504 6000  Fax +1 212 504 6666
www.cadwalader.com

July 7, 2025

**VIA ECF**

By **July 14, 2025**, Defendants shall explain their position in a letter filed on the docket.

Hon. Jennifer H. Rearden
United States District Court Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

SO ORDERED.

*Jennifer H. Rearden*

Jennifer H. Rearden, U.S.D.J.
Dated: July 9, 2025

Re:    *Roccaro et al. v. Nasary*, Case No. 1:24-cv-05861-JHR

Dear Judge Rearden:

We represent Plaintiffs Gary Roccaro and Maximum Quality Foods in the above-captioned matter.  Pursuant to Rule 3.C of Your Honor's Individual Rules and Practices in Civil Cases, we respectfully submit this letter motion to request that the Court enter the Proposed ESI Order, attached hereto as Exhibit A, to facilitate the production of electronically-stored information during discovery.  In the alternative, Plaintiffs request an informal conference to resolve the remaining disputes.

Under the Court's Case Management Plan and Scheduling Order, the parties were required to "discuss . . . provisions for the disclosure, discovery, or preservation of electronically stored information ('ESI')," and to file any "agreement reached between the parties concerning ESI." ECF No. 39 ¶ 9(f).  The parties met and conferred regarding the Proposed ESI Order on June 6, June 20, and twice on July 7th, and exchanged multiple drafts.

**Danielle V. Tully**  Tel +1 212 504-6585   Fax +1 212 504-6666   danielle.tully@cwt.com

# C A D W A L A D E R

Hon. Jennifer H. Rearden
July 7, 2025

 While the parties are largely in agreement on the terms of the Proposed ESI Order, two areas of dispute remain. Despite good faith efforts, including the two most recent meet and confers on July 7, 2025, the parties have been unable to reach resolution.  Accordingly, Plaintiffs request that the  Court enter the Proposed ESI Order or schedule an informal conference.  Defendants have indicated that they oppose this motion.

 District Courts have "broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 635 F.3d 201, 207 (2d Cir. 2012); *see also Stinson v. City of New York*, No. 10 CIV. 4228 RWS, 2015 WL 4610422, at *3 (S.D.N.Y. 2015) ("The Court is empowered to…shape the terms and conditions of the electronic discovery.")  Further, the Second Circuit has held that "[d]iscovery rules are to be accorded a broad and liberal treatment…to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark." *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003).

 There is no dispute that an ESI Order is necessary in this case and the Parties largely agree on the terms of the Proposed ESI Order.  The two remaining areas of disagreement are:

 **1. Entry of the Order by the Court:** Defendants oppose having the ESI Order entered by the Court and instead seek only a stipulation among the private parties.  However, as contemplated in the Case Management Plan and Scheduling Order, the ESI Order must be filed with the Court. (ECF No. 39 at ¶f.)  Further, Plaintiffs believe that the Court should approve of

# C A D W A L A D E R

Hon. Jennifer H. Rearden
July 7, 2025

all procedures governing how discovery is to proceed in cases it is overseeing, and that the use
of a non-approved, private stipulation creates enforceability concerns should the terms of the
ESI procedures be violated.

    **2.  Scope of ESI Production:** Defendants also seek to limit production to only e-mail,
Microsoft Word, Excel, PowerPoint, and PDF files.  Plaintiffs reasonably believe that
responsive materials may exist in other formats, including text messages and electronic
messaging platforms.  This is particularly relevant given the nature of Plaintiffs' trade secret
misappropriation and unfair competition claims, and the likelihood that key communications—
such as those involving MQF's suppliers, customers, and Defendants' attempts at starting a
competing business venture—occurred via these messaging platofrms.  Plaintiffs have already
served document requests that encompass such formats, and limiting ESI at this early stage
would risk omitting relevant evidence.

    Plaintiffs respectfully submit that neither of these issues should preclude entry of the
Proposed ESI Order.  To ensure that discovery proceeds efficiently and with clear parameters,
Plaintiffs request that the Court enter the attached Proposed ESI Order or schedule an informal
conference to address any remaining disputes.

    We thank the Court for its attention to this matter.

# C A D W A L A D E R

Hon. Jennifer H. Rearden
July 7, 2025

Respectfully submitted,

*/s/ Danielle V. Tully*

Danielle V. Tully

cc: Counsel of Record

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GARY ROCCARO, MAXIMUM QUALITY FOODS, INC.,<br><br>Plaintiffs,<br><br>-against-<br><br>ABDUL WAHAB NASARY, ABDUL TAWAB NASARY,<br><br>Defendants. | 1:24-cv-05861-JHR |

### [PROPOSED] STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

WHEREAS, it is anticipated that the discovery which may be produced in connection with the litigation of this matter will include hard-copy documents and information that is electronically stored;

IT IS THEREFORE STIPULATED, AGREED, AND JOINTLY REQUESTED by Plaintiffs Gary Roccaro and Maximum Quality Foods, Inc. and Defendants Abdul Tawab Nasary and Abdul Wahab Nasary (collectively, the "Parties"), by and through their respective counsel, that an order regarding the production of hard-copy documents and electronically stored information ("ESI") be entered according to the following terms and provisions ("Stipulation" or "Order"):

### I.    PURPOSE

1.    The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

2.      This Stipulation will govern the conduct of discovery of hard-copy documents and ESI as a supplement to the Federal Rules of Civil Procedure, this Court's eDiscovery Guidelines, and any other applicable orders and rules.

3.      This Stipulation is subject to amendment or supplementation based upon later agreement of the Parties, if necessary, in light of further case developments, including that any provision in this Stipulation turns out to be unduly burdensome, costly or disproportionate in light of the value of this matter..

4.      This Stipulation is intended to streamline production and not to make discovery more time consuming or expensive than it otherwise would have been. To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information.

5.      The Parties agree to cooperate in good faith regarding discovery in general.

6.      This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation. Nothing in this Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable.

7.      Nothing in this Order shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

8.      The Parties agree to promptly alert all Parties concerning any technical or other problems associated with complying with this Order. To the extent compliance with this Order imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

9.      Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing, or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

## II.    DEFINITIONS

1.      Words shall have their normally accepted meanings as employed in this Order. The word "shall" is mandatory. The words "include," "includes," and "including" are not limiting. The singular words shall include the plural and vice versa. In addition, as used in this Order, the following words shall have the following meanings:

2.      The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ.

P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of this term.

3.     The term "electronically stored information" or "ESI," as used herein, has the same meaning as set forth in Fed. R. Civ. P. 34(a)(1)(A). For avoidance of doubt, ESI includes Documents existing in electronic form at the time of collection, including, but not limited to, email messages, other electronic messaging platforms (such as chat messaging or Slack messaging), calendar items, memoranda, letters, reports, presentations, spreadsheets, databases, charts, and handwritten notes.

4.     The term "Information" includes information of any type, kind, or character, whether it is a Document, information contained in a Document, information revealed during a deposition, information revealed in an interrogatory or other discovery response, or otherwise.

5.     The term "Litigation Material" shall mean Documents and Information produced, disclosed, or filed in the litigation by a Party or non-party, whether produced pursuant to formal or informal discovery requests or motion practice, by agreement, or otherwise, and whether revealed in a Document, deposition (including testimony and deposition exhibits), an interrogatory answer, a response to a request for production or for admission(s), a submission to the court or otherwise, and including all Documents and Information produced or disclosed by non-parties in this litigation pursuant to subpoena and/or deposition notice, and all other discovery taken pursuant to the Federal Rules of Civil Procedure, including third-party discovery pursuant to Rule 45.  This protocol and protections herein shall apply to all Litigation Material.

6.      The term "<u>Party</u>" means a party to this litigation.

7.      The term "<u>Producing Party</u>" shall mean any Party to the litigation or any non-party or third party, including the Producing Party's counsel, retained experts, directors, officers, employees, business partners, or agents, who produces, discloses, or files any Litigation Material, provided that the Party has possession, custody, or control of the ESI, Information, or Litigation Material.

8.      The term "<u>Receiving Party</u>" shall mean any Party to the litigation, including its counsel, retained experts, directors, officers, employees, business partners, or agents, who receives any Litigation Material.

9.      The term "<u>Protected Material</u>" means any Litigation Material that is designated according to the Protective Order entered in this Litigation.

10.     The term "<u>Protective Order</u>" means the protective order issued by the Court in this litigation.

11.     The term "<u>Family</u>" means a Document and all other Documents in its attachment range, emails with attachments, files with extracted embedded OLE Documents, and emails or other Documents which together constitute Family groups. For the avoidance of doubt, a hyperlinked Document, such as a cloud-based Document in Google Drive, is not part of a Family group.

12.     The term "<u>Hard-Copy Document</u>" means Documents existing in paper form at the time of collection.

13.     The term "<u>Native Format</u>" means and refers to the format of ESI in which it was normally created, viewed, modified and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

14.     The term "<u>Metadata</u>" means: (i) structured, i.e., fielded, Information embedded in a native file which describes, *inter alia*, the characteristics, origins, usage, and/or validity of the electronic file; (ii) Information generated automatically by the operation of a computer or other Information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) Information, such as Bates numbers, created during the course of processing Documents or ESI for production, and (iv) Information collected during the course of collecting Documents or ESI, such as the name of the media device, or the custodian or non-custodial data source from which it was collected.

15.     The term "<u>OCR</u>" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

16.     The term "<u>Searchable Text</u>" means the native text extracted from an electronic Document and any optical character recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

17.     The term "<u>Load File(s)</u>" means electronic files provided with a production set of Documents and images used to load that production set into a Receiving Party's Document review platform and correlate its data within that platform.

### III.    GENERAL PROVISIONS

1.      Identification of Custodial and Non-Custodial Documents and ESI.  The Parties will disclose a preliminary list of (a) three custodians likely to possess potentially relevant Information and (b) non-custodial data sources likely to contain potentially relevant Hard-Copy Documents and ESI, in accordance with Fed. R. Civ. P. 26(f).

(a)      Once discovery requests have been propounded, the Parties will further meet and confer regarding those custodians and custodial and non-custodial data sources from which Hard-Copy Documents and ESI will be collected for review for potential production in this litigation.

(b)      The custodian and data source exchanges will include brief explanations of the rationale for their selections; for example, for custodians, their current job titles, dates of employment, and descriptions of their work, and for data sources, location Information and description.

(c)      If the Producing Party avers that a source of ESI is "not reasonably accessible because of undue burden or cost ," pursuant to Fed. R. Civ. P. 26(b)(2)(B), the Parties will meet and confer as to the accessibility of the ESI and the most cost-efficient means of obtaining the ESI if it is necessary to produce it.

2.      Preservation. The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable Information in the Party's possession, custody, or control.  The Parties agree that data, including Protected Material, should be preserved for only the time for which this litigation is pending or is reasonably anticipated. All Protected

Material shall be maintained and/or destroyed pursuant to the Protective Order and local data protection laws at the completion of this litigation.

3. <u>Privilege Logs</u>.  The Parties shall prepare privilege logs listing categories or groups of ESI in which all items are privileged and described in its log, in a manner consistent with their obligations under the Federal Rules of Civil Procedure, the Southern District of New York Rules, or any applicable court rule or order.  A category or group of privileged ESI may be recorded on a privilege log in a single entry if (i) the records are part of the same email thread, including attachments, (ii) the Documents are duplicates, or (iii) the emails are exchanged between the same entities (including individuals employed at law firms and/or corporate clients), the emails relate to the same general topic, and the privilege holder asserts the same privilege as to all the communications. The Parties' privilege logs must contain all information required under the Federal Rules of Civil Procedure and must enable any claim for privilege in the privilege log to be reasonably ascertained by the party receiving the privilege log. If a Receiving Party requests further Information relating to a category or group identified on a Producing Party's privilege log, the Producing Party, following a conference concerning the Receiving Party's request, shall in good faith provide agreed-upon, additional, reasonably sufficient Information to enable the requesting Party to determine whether to challenge the privilege claim in a manner consistent with the Producing Party's obligations under the Rules. The ultimate adjudication of challenged privilege claims shall be made by the Court.

(a)    Notwithstanding the requirements of the Federal Rules of Civil Procedure, the Southern District of New York Court Rules, or any applicable court rule or order, the Parties

agree that they need not include in any privilege log the following types of Documents: (i) communications that are protected by the attorney-client privilege and occurred after the filing of the complaint in this case; and (ii) work product created by trial counsel or by a consulting or testifying expert, including work product created after the filing of the original complaint in this case.

    4. <u>Key Word Searches</u>.  If the Producing Party is identifying responsive ESI using search terms, the Parties will meet and confer about search terms . To facilitate the meet and confers, the Producing Party shall make disclosures reasonably necessary for the requesting Party to assess the proposed terms and resolve any disputes, including, but not limited to, the proposed search terms and the sources being searched. Absent a showing of good cause, a requesting party may request no more than 8 additional terms to be used in connection with the electronic search. Focused terms, rather than over-broad terms (e.g., product and company name), shall be employed.

    (a) Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if Documents captured by search terms are in fact responsive to the requesting Party's discovery requests. Similarly, nothing in this Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of Documents determined to be responsive. Further, nothing in this Order requires the production of Documents captured by any search term that are not relevant and responsive to the requesting Party's request, that are privileged, or that are otherwise protected from disclosure.

5.      <u>Deduplication</u>.  Each Party shall make reasonable efforts to globally de-duplicate exact duplicate Documents within the Party's ESI dataset across all custodians at the Family level.

6.      <u>Hyperlinks</u>.   Documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will not be treated as attached files and will not be produced as attachments in order behind Documents where they were referenced by link (and such a hyperlinked Document may or may not be the version that is contemporaneous with the Document that links to it).   Parties may make a reasonable number of requests for hyperlinked Documents, as needed.   The Parties agree to meet and confer to resolve any disagreements as to what constitutes a reasonable number of requests.

## IV.     MISCELLANEOUS PROVISIONS

1.      <u>Good Faith</u>.  The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation.  If a Producing Party cannot comply with any material aspect of this Order, such Party shall inform the requesting Party as to why compliance with the Order was unreasonable or not possible within fifteen (15) days after so learning. No Party may seek relief from the Court concerning compliance with the Stipulation, unless it has conferred with other affected Parties to the action.

2.      <u>Inadvertent Production of Privileged Material</u>.  The inadvertent production of Information subject to protection by the attorney-client privilege, and the work product, joint defense, or other similar doctrine, or by another legal privilege protecting Information from discovery, shall be addressed pursuant to the Protective Order.

3.      <u>Costs and Burden</u>. Each Party shall bear its own costs with respect to its efforts to identify, preserve, collect, and produce ESI in accordance with this Stipulation and Order.

4.      <u>Protective Order</u>.  Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the Protective Order.

5.      <u>Modification</u>.  This Order may be modified by a stipulated order of the Parties or by the Court for good cause shown.

6.      <u>Translation of Produced Materials</u>.  The Producing Party has no obligation to create a translation of the Documents or any portion thereof. For any foreign-language Documents responsive to Document requests that a Party reasonably knows, as the result of a reasonable investigation, have been translated into the English language using human translators or through machine translation in the ordinary course of business or for its own purposes, except to the extent such translation is protected by attorney-client privilege or work product doctrine, the Producing Party shall produce a translation of the original Document with the original. The Parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination. If, during the course of discovery, it is determined that a large amount of documents exist in a particular foreign language, the Parties will meet and confer about how to translate such documents into English in a cost-effective fashion.

7.      <u>Non-Party Documents</u>.  A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that (1) the subpoenaed non-

party should produce Documents in response to the subpoena to all Parties; and (2) the Parties to this litigation have requested that non-parties produce Documents in accordance with the specifications set forth herein. The Parties to this litigation agree to comply with the Federal Rules of Civil Procedure with respect to non-party subpoenas and the production of documents responsive thereto. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena. If a non-party production is not Bates-stamped, the Parties that agree a unique Bates number prefix will be applied to the documents.

        8.    <u>Lost, Destroyed, or Irretrievable ESI</u>. If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall explain where and when the responsive ESI was last retrievable in its original format and disclose the circumstances surrounding the change in status of that responsive ESI, whether that Information is available from other sources, or whether any backup or copy of such original responsive ESI exists.

        9.    <u>Continuing Obligations</u>. The Parties will continue to meet and confer regarding ESI issues as reasonably necessary and appropriate.  This Order does not address or resolve any objections to the Parties' respective discovery requests.

        10.    <u>Reservation of Rights</u>. Nothing in this Order may be construed or interpreted to waive any objections to the production, discoverability, admissibility, or confidentiality of Hard-Copy Documents and ESI, or independently move for an appropriate

Protective Order pursuant to the Federal Rules of Civil Procedure.  Nothing in this Order shall be

deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or

a Court ruling, to modify proposed or previously agreed upon search terms, techniques, tools, or

any other provision set forth in this Order for good cause, including but not limited to undue burden

and cost.

## **PRODUCTION FORMAT**

     1.   <u>Production Components</u>.  Except as otherwise provided below, ESI must be

produced in accordance with the following specifications:

     (a)    an ASCII delimited data file (.DAT) using standard delimiters;

     (b)    an image Load File (.OPT) that can be loaded into commercially acceptable

          production software;

     (c)    single-page black-and-white TIFF or color JPEG images, or native files

          with single-page placeholder TIFF images, depending on the applicable

          production format for each type of file; and

     (d)    Document level .TXT files for all Documents containing extracted full text

          or OCR text.

     (e)    Family relationships (email, messaging applications, or otherwise) will be

          maintained in production. Attachments should be consecutively produced

          with their parent Document. Objects, Documents, or files embedded in

          Documents, such as OLE embedded objects (embedded MS Office files,

          etc.), or images, etc., embedded in RTF files, shall be extracted as separate

files and treated as attachments to the parent Document. Chats from programs like Slack, Microsoft Teams, HipChat, and other similar messaging platforms should be produced in Families by channel or private message.

(f)     If a particular Document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2.     <u>Production Media and Access Controls</u>.  Productions must be encrypted and produced through secure electronic means, such as secure file-sharing methods (e.g., FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Nothing in this Order will preclude or impair any and all protections provided the Parties by any protective order(s) agreed upon and entered into by the Parties. Parties will use their best efforts to avoid the unnecessary copying or transmittal of produced Documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any Documents.

3.     <u>Data Load Files/Image Load Files</u>. Each TIFF in a production must be referenced in the corresponding image Load File. The total number of Documents referenced in a production's data Load File should match the total number of designated Document breaks in the image Load File(s) in the production. The total number of pages referenced in a production's image Load File should match the total number of TIFF files in the production. The total number of Documents in a production should match the total number of records in the data Load File. Load

Files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

       4.    <u>Metadata Field</u>.  The Parties shall use industry standard, reasonable and proportional methods of collection and processing that preserve the integrity of Document Metadata, and of parent-child and Family group relationships such as the association between attachments and parent Documents, or between embedded Documents and their parents, or between Documents, including, but not limited to, emails (e.g., Outlook, Gmail) or messaging or communication posts (e.g., Slack, Teams, Google Hangouts, Google Chat).

       5.    <u>TIFFs</u>.  Unless excepted below, single-page, black-and-white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all Documents. If the Receiving Party is not reasonably satisfied with the quality of TIFFs for particular images, it may request the Producing Party to produce those images in Native Format. In addition, the Parties shall use reasonable efforts to process word processing Documents (e.g., MS Word) with track changes and/or comments unhidden in the TIFF image.

       6.    <u>Bates Numbering</u>.  All produced ESI must be assigned a unique Bates number that is sequential within a given Document and across the production sets, along with a confidentiality designation. The Producing Party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image. Original Document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Bates

numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given Document. The Bates numbers in the Load File must match the corresponding Documents' beginning Bates numbers in the data Load File. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Attachments to Documents will be assigned Bates numbers that directly follow the Bates numbers on the Documents to which they were attached.

7.     <u>Color</u>.  Any ESI that is not an email communication and contains color will be processed as a JPEG file at 300 DPI. Where the Receiving Party reasonably suspects that particular email communications contain color that is necessary to determine the meaning of the communication, the Receiving Party may make reasonable and proportionate requests for particular email communications to be produced in color. The Parties agree to meet and confer regarding such requests as appropriate. A Party making such a request shall make the request by individual Bates number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of Documents.

8.     <u>Text Files</u>.  A single text file shall be provided for each Document. The text file name shall be the same as the Bates number of the first page of the Document with the Document extension ".txt" suffixed. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the Document requires redaction and is not a spreadsheet, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, and in the case of imaged Hard-Copy Documents, a text file shall be created using OCR text and

shall be produced in lieu of extracted text. Text shall be provided in UTF-8 format. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speakers' notes, and text from Documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns, and rows as well as all URLs. When possible, the text of native files should be extracted directly from the native file. Parties will use their best efforts to use OCR to search foreign-language Documents using the appropriate settings for those languages, although that may require additional processes. Text files will not contain the redacted portions of the Documents. A commercially acceptable OCR technology should be used with the highest quality setting during processing for all scanned, Hard-Copy Documents, and for Documents with redactions other than Excel files and other spreadsheets which shall be redacted in Native Format. Text extracted from emails should include the following header Information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on the email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email.

9. <u>Native Files</u>. All spreadsheet files (e.g., Microsoft Excel or Google Sheets), as well audio and video files, shall be produced as native files with TIFF placeholder images. Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file, and the redacted native file will be produced as provided herein. To the extent that they are produced in this litigation, audio, video, and multi-media files will be produced in Native Format. The Parties will meet and confer on the production of other file types, such as proprietary

files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available). A Bates numbered TIFF placeholder indicating that the Document was provided in Native Format must accompany every native file. Where redaction makes production of Native-Format files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native form, and presentations presumptively redacted in image form, in these cases without the need for further conferring. All presentations (e.g., Microsoft PowerPoint) shall be produced with any "notes," comments, and/or other similar metadata in a clearly visible and legible format. At the Receiving Party's election, any produced presentation file shall be re-produced in Native Format with a new Bates number corresponding to the native-format production.

10.  <u>Confidentiality Designation</u>.   All images will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this litigation. Each Document produced in Native Format will have its confidentiality designation indicated on its corresponding TIFF placeholder.

11.  <u>Databases and Other Data Sources</u>.  The Parties shall meet and confer regarding the production, format, and scope of relevant structured data, or aggregated or threaded data source, or data otherwise maintained by an application (e.g., Microsoft Access, SharePoint, Oracle, Salesforce, ACT!, or any other proprietary databases or services) in order to ensure that any Information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden or cost on the Producing Party. The Parties will cooperate in the

exchange of sufficient Information concerning such databases to facilitate discussions on the production of responsive Information, including available data fields/objects and schema. To the extent a Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in an acceptable format, including issues that may arise with respect to obtaining access to any such software and operating manuals.

12. <u>Production of Family Groups and Relationships</u>. If any member of a Family group is produced, all members of that group must also be produced or else logged as privileged. For the avoidance of doubt, a hyperlinked Document, such as a cloud-based Document in Google Drive, is not part of a Family group.

13. <u>Spreadsheets</u>. Spreadsheet files requiring redaction, including, without limitation, Microsoft Excel files, will be redacted and produced natively.

14. <u>Encrypted or Password-Protected ESI</u>. For any ESI that is produced in encrypted format or is password-protected, the Producing Party will provide the Receiving Party with a means to gain access to those native files (e.g., by supplying passwords).

**SO ORDERED.**

Dated: July ___, 2025
      New York, New York

_____
      JENNIFER H. REARDEN
      United States District Judge